# 2001 DTA 124

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I DE SAN JUAN
PANEL III**

ROSANA LAFONTAINE RIOS
Querellante-Recurrida

v.

CIUDAD CENTRO INC., TEN GENERAL CONTRACTORS S.E., UNITED SURETY & INDEMNITY
Querellados-Recurrentes

Núm. KLRA-00-00843

San Juan, Puerto Rico, a 15 de febrero de 2001

Panel integrado por su Presidente, el Juez Negrón Soto,
y los Jueces Segarra Olivero y Negroni Cintrón

Negrón Soto, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

La querellada, Ten General Contractors S.E., en adelante recurrente, nos solicita la revisión de la resolución emitida el 31 de agosto de 2000, notificada el 15 de septiembre siguiente, por el Departamento de Asuntos del Consumidor, en lo sucesivo D.A.C.O. Mediante este dictamen, se le ordenó a la recurrente y a Ciudad Centro,

Inc. reparar los defectos de construcción del apartamento de la recurrida, por responder la aseguradora solidariamente hasta el monto de su fianza. D.A.C.O. compareció oponiéndose.

Por los fundamentos que exponemos más adelante, denegamos la expedición de esta revisión.

# I

Celebrada la vista administrativa, el 26 de junio de 2000, el D.A.C.O. formuló las siguientes determinaciones de hechos:

*"1. La parte querellante, Rosana Lafontaine Ríos, es propietaria del apartamento F-101 localizado en el Condominio Sierra Alta, en San Juan, Puerto Rico.*

*2. La querellante adquirió dicha propiedad de la querellada Ciudad Centro, Inc., mediante escritura de compraventa número siete (7), otorgada el 18 de abril de 1998, ante la Notario Público Alba Ellis del Valle Galarza.*

*3. La empresa que construyó el proyecto conocido como Condominio Sierra Alta, fue Ten General Contractors. United Surety & Indemnity fue la compañía afianzadora.*

*4. La Administración de Reglamentos y Permisos expidió el permiso de uso a dicha unidad el 6 de abril de 1998.*

*5. La parte querellante testificó durante vista administrativa, testimonio que mereció entera credibilidad de este Departamento, que desde los tres (3) meses de haber comprado el apartamento, la querellante comenzó a confrontar problemas por desbordamiento de aguas negras dentro de su apartamento. Las bañeras se inundan de heces fecales proveniente de las tuberías. El fregadero se tapa al igual que los inodoros.*

*6. La querellante declaró que le notificó verbalmente en tres ocasiones al gerente de proyecto de Ciudad Centro, Inc., Sr. Pablo Padró, del problema de desbordamiento de aguas negras dentro de su apartamento.*

*7. La parte querellada, Ciudad Centro, Inc., envió personal para que destapara las tuberías. Esto no ha resuelto el problema.*

*8. La parte querellante indicó que el problema de desbordamiento ocurre tan frecuente como dos o tres veces al mes.*

*9. La parte querellante declaró que una vez constituida la Junta de Condómines, ésta le ha notificado del problema de desbordamientos, pero que aún no han podido resolver el problema. Los últimos destapes de tuberías han sido alegadamente costeados por la Junta de Condómines de Sierra Alta. La última ocurrencia de desbordamiento sucedió el 10 de junio de 2000.*

*10. El tubo de desagüe localizado frente a su dormitorio se desborda. Las aguas negras también salen de un respiradero localizado en el cuarto de dormitorio.*

*11. Declara la parte querellante que el problema de desbordamientos ocurre en los apartamentos del primer nivel del complejo de vivienda, como ocurre con el de la querellante.*

*12. La parte querellada, Ciudad Centro, Inc., declaró que el problema de desbordamiento en el apartamento de la querellante es un hecho aislado. Sin embargo, este Departamento tiene conocimiento de la existencia de otras querellas radicada (sic) ante nos relacionadas al problema de desbordamiento de aguas negras en el Condominio Sierra Alta.*

13. La parte querellante radicó querella ante este Departamento, el 10 de junio de 1999, ante la imposibilidad de lograr resolver sus reclamaciones ante la desarrolladora. La parte querellante alega varios defectos de construcción, entre ellos desbordamiento de aguas negras, la necesidad de una rampa de acceso a su apartamiento para personas con impedimentos, humedad en los gabinetes de cocina, las zanjas para los alcantarillados no fueron construidas alegadamente según se acordó, la losa del baño principal se está levantando, las ventanas de cristal se le caen las hojas. La petición de la parte querellante fue que las cosas antes mencionadas las pongan al día, especialmente el problema de las aguas negras y las rampas.

14. Este Departamento ordenó una inspección de la querella de epígrafe el 30 de julio de 1999. El técnico que realizó la inspección del inmueble, Víctor Collazo Frasqueri, señaló lo siguiente:

- El "clean-out" que ubica frente al apartamento está destapado, pues según alegó la consumidora, cuando está tapado, las aguas negras retornan y salen por el inodoro y ducha. Pudimos observar en el patio papel sanitario que ha salido por el "clean-out". El inodoro en el cuarto del pasillo descargó de manera normal cuando lo operamos.

- Se reclama que no existen facilidades adecuadas de acceso para personas impedidas en todo el proyecto.

- Los gabinetes de cocina tienen alegadamente un problema de humedad que no se apreció durante la inspección.

- Las ventanas del apartamento tienen celosías de cristal y son tipo Miami. Algunas de éstas son más pequeñas de lo requerido, por lo cual se salen de lugar. Esto es así en la sala y cuarto dormitorio principal.

- No se construyeron unos conectores o medias cañas en el patio lateral y trasero del patio para llevar las aguas pluviales hacia la alcantarilla.

- Las ventanas serán revisadas por el subcontratista que las instaló y el empañetado agalletado será corregido.

- Los asuntos principales reclamados en la querella respecto a las rampas y la obstrucción en la tubería sanitaria, no son estimables al presente.

15. La parte querellada no ha resuelto el problema de los desbordamientos de forma permanente y satisfactoria, sólo temporera, no pudiendo garantizar a la parte querellante, el total uso y disfrute de su apartamento según fue el propósito al comprarlo."

Consideradas estas determinaciones de hechos, el D.A.C.O. ordenó a la recurrente y a Ciudad Centro, Inc. a reparar el defecto de construcción relacionado con el desbordamiento de las tuberías en el apartamento de la recurrida. Además, concluyó que la aseguradora respondía solidariamente hasta el monto de su fianza.

Inconforme, la recurrente solicitó su reconsideración. No habiendo D.A.C.O. tomado acción sobre la misma, acude ante nos, imputándole al D.A.C.O. que erró al:

"A. ...CONCLUIR EN AUSENCIA DE EVIDENCIA O BASE SUSTANCIAL QUE LA QUERELLADA TEN GENERAL CONTRACTORS S.E. ES SOLIDARIAMENTE RESPONSABLE YA, QUE REALIZO LA CONSTRUCCION DE LA SECCION DE TUBERIA SANITARIA EN DONDE OCURREN LAS OBSTRUCCIONES Y, POR CONSIGUIENTE, LOS ALEGADOS DESBORDAMIENTOS.

B. ...DESCARTAR Y NO TOMAR EN CONSIDERACION LA EVIDENCIA PRESENTADA POR CIUDAD CENTRO INC. EN TORNO A LA PROBLEMATICA DEL SISTEMA SANITARIO BAJO EL CONTROL Y SUPERVISION DE LA COMPAÑIA DE AGUAS, ANTES AUTORIDAD DE ACUEDUCTOS."

De lo antes expuesto surge claramente que la controversia sólo se refiere a un alegado defecto de construcción, el relacionado con el sistema sanitario, ya que los otros fueron aceptados y aparentemente corregidos por el recurrente.

## II

Al examinar los dos señalamientos de error, nos percatamos de que los mismos se refieren a la apreciación y aquilatación de la prueba desfilada ante D.A.C.O. No obstante, la recurrente no hizo solicitud alguna para someter una exposición narrativa de la prueba, para la cual tenía que presentar una moción por separado junto al escrito de revisión, conforme a la Regla 67 (A) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P. R.A. Ap. XXII-A. ■ Es sabido que en ausencia de una transcripción o de una exposición narrativa de la evidencia presentada en instancia, se presume que la parte apelante o recurrente acepta sin reservas la situación fáctica determinada por el foro apelado o recurrido. Véase *Acosta Vargas v. Tió*, 87 D.P.R. 262, 264 (1963); *Benítez Guzmán v. García Merced*, 126 D.P.R. 302, 308 (1990).

Es doctrina reiterada que las decisiones administrativas gozan de una presunción de regularidad y corrección y que nuestra intervención con las mismas está limitada por la ley y la jurisprudencia. Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P. R.A. sec. 2101 *et seq.*; *Misión Industrial de P.R. v. Junta de Planificación*, res. el 30 de junio de 1998, **98 J.T.S. 79**; *Misión Industrial de P.R. v. Junta de Planificación*, res. el 21 de marzo de 1997, **97 J.T.S. 34**; *Maisonet Felicié v. F.S.E.*, res. el 30 de diciembre de 1996, **96 J.T.S. 169**; *Fac. C. Soc. Aplicadas, Inc. v. C.E.E.*, 133 D. P.R. 521 (1993); *Henríquez v. C.E.S.*, 120 D.P.R. 194, 210 (1987); *M. & B. S., Inc. v. Dpto. de Agricultura*, 118 D.P.R. 319, 331 (1987); *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). En consecuencia, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Misión Industrial de P.R. v. Junta de Planificación, supra; Reyes Salcedo v. Policía de P.R.*, res. el 13 de mayo de 1997, **97 J.T.S. 58**; *Fac. C. Soc. Aplicadas, Inc. v. C.E.E., supra; Fuertes y otros v. A.R.P.E.*, 134 D.P.R. 947 (1993); *Murphy Bernabé v. Tribunal Superior, supra.* Esto se cumple cuando se encuentra una base racional en el récord administrativo para sostener las conclusiones de la agencia, sin sustituir el criterio del tribunal por el de la agencia administrativa. *Misión Industrial de P.R. v. Junta de Planificación, supra; Metropolitana, S.E. v. A.R.P.E.*, 138 D.P.R. 200 (1995); *Hilton Hotels v. Junta Salario Mínimo*, 74 D.P.R. 670, 703 (1953).

Por eso, en estos casos, como mencionamos anteriormente, la revisión judicial debe limitarse a determinar si la agencia actuó de manera arbitraria e ilegal o en una forma tan irrazonable que su actuación constituyó un abuso de discreción, o cuando las determinaciones de hechos formuladas por la agencia administrativa no encuentren apoyo en evidencia sustancial existente en la totalidad del récord. *Misión Industrial de P.R. v. Junta de Planificación, supra; Maisonet Felicié v. F.S.E., supra; Fuertes y otros v. A.R.P.E., supra.*

Teniendo presente estas normas de derecho, de un mero examen de las determinaciones de hechos formuladas por el D.A.C.O., surge que la recurrente construyó el condominio donde está localizado el apartamento de la recurrida; que la recurrida comenzó a tener el referido problema de desbordamiento desde los tres meses de haber adquirido el apartamento; que el referido problema no es un hecho aislado del apartamento de la recurrida, sino que, por el contrario, sucede en otros apartamentos localizados en el primer piso; que existen otras querellas ante el D.A.C.O. relacionadas al mismo problema; que ese problema es uno grave que ocurre varias veces al mes y no ha sido resuelto permanente, ni satisfactoriamente, por el constructor recurrente, como tiene que ser, y que no se le ha podido garantizar a la recurrida el uso y disfrute de su apartamento.

Ante esa clara situación fáctica, es forzoso concluir que la recurrente no ha demostrado que D.A.C.O. haya actuado arbitraria, ilegal o irrazonablemente. Por lo tanto, las determinaciones de hechos no sólo encuentran base racional en el récord administrativo, sino que son más que suficientes para sostener el dictamen del D.A.C. O. ■

Ciertamente, sorprende que la recurrente haya comparecido a este Foro apelativo a revisar la resolución del D.A.C.O. basada en meras alegaciones que no tienen apoyo alguno en la prueba acreditada en el recurso. En lugar de estar incurriendo en gastos para recurrir frívolamente a los tribunales, lo que debe hacer es arreglar aquéllo que construyó mal. No puede haber excusa, incluyendo que se le aprobó el proyecto con determinadas especificaciones, para mantener a los residentes del proyecto Ten General Contractors S.E. con un problema de desbordamiento de aguas negras que ciertamente afectan su salud y les impiden disfrutar de su propiedad.

Ante la frivolidad de este recurso, es mandatario sancionar a la recurrente, Ten General Contractors S.E. En consecuencia, se le impone como sanción, el pago de $500 a favor de Rosana Lafontaine Ríos, los cuales deberá depositar en la Secretaría del Tribunal de Primera Instancia, con copia del escrito que allí presente a este Foro apelativo, y $500 para el Estado Libre Asociado de Puerto Rico, los cuales deberá pagar mediante giro postal, cheque de gerente o cheque certificado a favor del Secretario de Hacienda de Puerto Rico y depositarlo en nuestra Secretaría, ambas en el término de diez (10) días contados a partir de que esta resolución advenga a ser final y firme y bajo apercibimiento de sanciones adicionales.

### III

Por los fundamentos antes expuestos, denegamos la expedición del auto solicitado, y ante la frivolidad del recurrente, se le imponen las sanciones antes expresadas, conforme a lo dispuesto en la Regla 85 (C) de nuestro Reglamento, con las cuales deberá cumplir fielmente y sin dilación alguna.

Lo acordó el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 124

1. Esta Regla requiere que cuando los errores se refieran a la apreciación de la prueba oral o que alguna determinación de hechos no está sostenida por la misma, la parte recurrente lo haga constar en moción por separado a presentarse junto al escrito de revisión. Su inciso (D) indica que cuando ello no se solicite, *"...el caso será considerado y resuelto conforme al contenido de los autos en revisión, que podrán incluir una exposición estipulada de la prueba oral, presentada en cualquier momento antes de sometido el caso por las partes"*, lo cual no ha ocurrido en el caso de marras.

2. Véase nuestra Resolución del 18 de octubre de 2000 en *Esmeraldo Sanyet v. Félix Cosme H/N/C Telecommunication Center,* KLRA-00-00607, donde denegamos la expedición del auto de *certiorari* para revocar un dictamen de D.A.C.O. que resolvió el contrato de un mueble que no sirvió el propósito para el cual fue vendido. Mediante Resolución del 12 de enero de 2001, nuestro Tribunal Supremo, al denegar la solicitud de un *certiorari* para revisar nuestro dictamen, impuso sanciones al recurrente por entender que el mismo era frívolo.